Long-Lewis Mr. Finch. May it please the Court, Nate Finch for the Corley family. With me is my co-counsel Pat Cahey, Counsel for Defendants. I'd like to thank this Court for giving us the privilege of oral argument in this very important and unique case for the Corley family and the defendants. And the jurisdictional issues in this case have been driving me nuts for weeks. Yes, and I think the best – I think the Court does have jurisdiction to address the merits of this appeal. I think the best case on point on that is the Pace v. Air and Liquid Systems case that we cited in one of our jurisdictional briefs where essentially a similar situation It was a summary judgment order out of MDL 875 in Philadelphia that ended up in the case was remanded back to federal court in South Carolina and then appealed up to the Fourth Circuit. And basically the Fourth Circuit said, you don't want to have seriatim appeals. You wait until the entire case is resolved one way or another. I think Judge Pryor was not asking about the reviewable issue, which has been driving me nuts. I think he was asking about the more fundamental issue of there are parties that were dismissed without prejudice and what effect that has on whether this is a final judgment or not. If you can address that issue, please. I think the – there is a final judgment as to the parties that have not been dismissed without prejudice and that is just – I don't view this as any differently as if you're in the middle of the trial and you settle with one or two defendants and you keep on the case by verdict and judgment as to the remaining defendants. And even though parties have been dismissed without prejudice, I do think as to the ones that are left, it is a final judgment. We've got kind of precedents that are going all over the place on this. And we start with Lecomte versus Mr. Chipp, the old Fifth Circuit in 1976. Then we have Ryan. Ryan is an unusual case that – where there were some jurisdictional allegations still remaining in a complaint. Then we get Mesa, which I think misreads Ryan and totally ignores Lecomte versus Mr. Chipp, does not mention it at all, which is the earlier precedent. Then we have all these cases like State Treasurer versus Berry and Schoenfeld versus Babbitt. And I've been trying to make sense of them and it seemed to me that one way to make sense of them that benefits you in terms of whether this is a final judgment is, it's one thing if it's a 41A1 dismissal, but if it's a 41A2 dismissal, which is what we have here, that is a final judgment and that would be consistent with our earliest precedent, Lecomte. It would mean that this is a final judgment. I think I agree with that and I hope Your Honor is correct, but I . . . I don't know that it saves Mesa, but I don't know what to do about Mesa. Turning to the merits argument, if I might, Your Honor. When looking at this case, I was reminded of the – it's an old saying attributed to Abraham Lincoln, which is, if you call a dog's tail a leg, how many legs does a dog have? And the answer, of course, is four because calling a tail of legs doesn't make it so. This is a case, in fact, arising in large part from asbestos exposure to the defendant's asbestos products onboard Navy ships. From the very first paragraph of the very first complaint that Mr. Cahey filed for the Corley family in state court in Alabama in 2009, the complaint states that Charles Corley was continuously exposed to asbestos-containing products that were produced, manufactured, specified for use, installed, distributed, sold, and placed in the stream of commerce by the defendants in this case during his employment as a boiler room technician, shipwide maintenance worker, HVAC repairman, et cetera, including but not limited to the United States Navy, dates 1946 to 1973, job title, boiler room tech, shipwide maintenance worker, and it lists 1, 2, 3, 4, 5, 6, 7, 8, 9. Yes, I didn't see any indication of maritime jurisdiction. There was no indication of maritime jurisdiction until the motion for reconsideration stage. Yeah, I mean, so the case was litigated as a non-maritime case all along. The portions of the complaint you just read to me would not necessarily alert to me, the district judge, oh, we have a maritime case here. Isn't it even more than that? Didn't you disclaim any federal jurisdiction at all? We disclaimed federal jurisdiction for the purposes of not being in federal court, but there's concurrent jurisdiction. You can have a maritime case that is governed by federal law that's in state court. And the reason, the real reason this case was a disclaimer of federal jurisdiction at the outset, not that maritime law might not apply at some point, was Judge Rubino, if there's ever going to be a Hall of Fame for federal district court judges, he deserves a medal. I've been doing asbestos cases for 25 years and Mr. Cahey somewhat longer. The federal MDL, once upon a time, was called the black hole in Philadelphia. And if your case ended up in the black hole in Philadelphia, you would never get it resolved. I've had cases where the case was filed in 1988 and finally after Judge Rubino got through it, had a trial date in 2011. And so there was the disclaimer of jurisdiction for keeping the face out of federal court does not mean that there can't be a maritime claim at some point in state court. Absolutely. But if you're a judge and you said it absolutely does not have this and you never later said that it did, how then can you come back and say that it did after it's been fully litigated? Well, whether you look at it under waiver or judicial estoppel or under inviting error, I suggest to you that in the unique circumstances of this case, it wasn't until Judge Rubino issued his opinion in the Connor v. Alfa Laval decision that people in MDL 875 thought there might be a basis for maritime jurisdiction. Remember the posture of this case. Mr. Corley developed mesothelioma in 2009. He died. State court case removed to the federal court. I have a great deal of respect for Judge Rubino. I've tried two cases in front of him, both asbestos cases. One, a bench trial with billions of dollars at stake. One, a jury trial. I've argued dozens of motions. I think he, 99% of the time, he gets it right. And I don't just say that because I have been fairly successful in front of him. He gets it right sometimes even when I disagree with him. But in the context of this, what happened was the motion for summary judgments were filed and the timeline is important. The motions for summary judgments were filed in 2010. The magistrate renders an opinion based on Alabama state law in April of 2011. Our last brief objecting to the magistrate's report was June of 2011. And then July 22, 2011, Conor v. Alpha Laval changed the law. It may, may not. Counsel, in your motion for rehearing, aren't you required to argue that there was an intervening change in the law? Let's put aside for the moment whether a district court opinion can ever be a controlling change in the law for a district court. Put that aside for a second. Don't you need to at least argue it? I, I, I suggest to you that we did raise the Conor case. Did you say it was, it fell within an exception for rehearing based on an intervening change in the law? We did not use those specific words. And to, and, and I think I can just see Judge Rubino saying, well damn, excuse me. Darn it, counsel, why didn't you raise that to me before? But if at the end of the day, if the thrust of the federal rules of civil procedure is to allow liberal amendments to plead, to pleadings, to do justice, whether you're talking about federal civil procedure one or the fact in rule nine, it says may invoke admiralty jurisdiction or in 15, where even after you try a case to judgment, the evidence can be conformed to the pleadings. I think in the context of all of that, you have to look at whether he was correct under the circumstances, whether he. Isn't the case law on liberal amendments to pleadings for pre-judgment cases, not post-judgment cases? It is, Your Honor. But, but, well. Is there any case that you know of where post-judgment, the federal courts have said, oh, oh, you meant to try this under Georgia law versus Alabama law, maritime law versus state law, and said, oh, of course, now you got to go and do it all over again, completely do your analysis on a completely different substantive law. I have not found such a case, Your Honor. But I bet you, if you had, you would have cited it. Absolutely, I would have cited it. I would have made sure that was the first case in the brief. But, however, I've also never found a case where something so seminal as the Conner versus Alfa Laval case came down. The first time Mr. Fahey and I had a chance to raise that case to Robrino was in the papers that we filed on the motion for reconsideration. Remember this. He granted summary judgment after the Conner versus Alfa Laval. And then it was, I mean, there were. How can that be a controlling decision of law for him? It's a controlling decision of law for the cases in MDL 875, in the sense that the same judge has all the cases. Isn't the case law clear as day that no district court opinion binds any other district court, including that district court? Yes, I agree with Your Honor. In terms of it is not a de jure controlling law, but it is a de facto change in the landscape. I see my time is up. I sometimes have fun teasing district judges that they don't make law. Sometimes they get a little upset. But then when I explain what I mean, their decisions are never precedential. Isn't that right? As a technical matter, that is correct. But in the context of a docket of 50,000 cases where he's plowing through hundreds of them a day, I would respectfully suggest that in analyzing this, you take into account the I'll sit down. Thank you, Mr. Harris. May it please the Court. I'm Jamie Harris. I represent ViacomCBS, but I drew the short straw, or I have the privilege, I should say, of speaking on behalf of all the defendants, and there are a number of us. I want to focus initially on one central issue in this case. That's ... I think there are a lot of things that have been raised, but the merits are fairly narrow. Did the trial court abuse its discretion or commit plain error in denying the consecutive post-judgment motions to apply maritime law? Can you ... I apologize, and I want you to address the merits, but can you please address  Whatever is decided here, the important part of it is going to be on those statutes, on whether what is a final order, and is this a reviewable decision or not? Let me address territorial jurisdiction first. I think it's more simple, and it's straightforward. The Pace case that they cite is Fourth Circuit, not binding, and in my mind, not persuasive. It relies in large part on, excuse me, digital equipment from the U.S. Supreme Court that does not even reference Section 1294. What do we make of roofing and sheet metal in our case? Yeah. Roofing and sheet metal, excuse me, stands for the same proposition that ... excuse me, not what Pace said. It stands for the proposition that this court will not review the decisions of district courts from other circuits. It won't review the transfer order. Correct. That particular case regarding the transfer order ... That doesn't mean, though, that all the interlocutory merits decisions that then merge into a final judgment aren't reviewable, as every court of appeals that I have found said they are, after a transfer. When the final judgment is entered, all the interlocutory, previously interlocutory decisions on the merits merge into the final judgment and are reviewable, save that transfer order from the other circuits not reviewable. But all the circuits, from what I can tell, are in agreement that something like this, a partial summary judgment that then merges into the final judgment, once final judgment is entered, becomes reviewable. Why not? Well, Judge, those district court decisions are reviewable by the courts in which they sit, either under a 54B or through a writ. Well, the final judgment was entered by the Northern District of Alabama, right? I was just saying, as a predicate, that it was reviewable elsewhere. Those orders were reviewable elsewhere before they came here. The partial summary judgment order was reviewable? Only reviewable under Rule 54, Judge, if that certification ... It wasn't certified under 54, so it wasn't reviewable. Right. The notice was filed and then withdrawn. That's not the definition of reviewable, is it? Reviewable is capable of being reviewed, right? Yeah, it's capable of being reviewed. Right. Haven't we said that discretionary writs are capable of being reviewed? Right, we have. And why would Rule 54, which is a judgment discretionary call on partial summary judgments, not be something that's capable of being reviewed under Rule 54B? I was saying, Judge, that it would be reviewable by the Third Circuit. Right. Had it been entered. Yes. Only because it's not a reviewable decision that would adhere to us. It would have to be adhered to the original court with which it was done. It would be reviewable there. And I think, to answer Your Honor's prior question, there is precedent for the Eighth or, excuse me, McGeorge, where claims were dismissed and ultimately final judgment was entered. That court decided that it could not hear those prior claims. And it addressed the very issue I'm raising. And that is, it's not that there was no opportunity for review. There was opportunity for review under 54B. There was opportunity to seek a retransfer of the case so that they could be reviewed again. So I think in that regard, the . . . Wisdom's opinion says it does not rest on the reviewability issue. Isn't that right? I think that's . . . When it says that the transfer order, that they don't have jurisdiction to review it, right? Correct. They say we're not relying, though, on the language of what's the section 1294 about having been reviewable in the Third Circuit. They say we're not . . . That's not the basis for our decision. Judge, I can't . . . Yeah. I don't know that I can comment on that. Okay. Forgive me. Let's . . . But . . . Well, in any event, let me move on to the second jurisdictional question. And that is that this does not squarely fit Ryan. And I'm with . . . I struggled with the court on reviewing the Ryan and the Ryan exceptions. And one thing I would say that subsequent to the initial briefing is, one would have to look extrinsically, beyond the record, to things like a presumption that things have been resolved in bankruptcy court. It's not nice and neat. And I would suggest that if this court were to find jurisdiction over this case, it would require a further amendment or say . . . Excuse me, to the Ryan rule, or saying that the Ryan rule doesn't apply to this case. Have we not interpreted Ryan to mean that where there has been a resolution of some claims and that . . . or as the parties, and a dismissal of other parties where there's an intention to get an appeal, that that indicates that there's a manufacture of jurisdiction and we dismiss for the trial court to dismiss with prejudice, right? Yes. Right. And is that not exactly the situation we have here? Well, I think it's also been a bright line rule. And if we look at the criticism in the Berry case by Judge Cox in his concurring opinion, one of the things he said that is helpful, the one thing he would give the Ryan rule is its clarity. It is clear. What about Lecomte though? Lecomte says something completely different. I understand there is a . . . And it's an earlier precedent that Mason doesn't mention, right? I understand, Judge. It says it's a final judgment. It's not with prejudice, right? I found it as convoluted as you did, Judge. I did. Are you familiar with the in re of asbestos products liability litigation case from the Third Circuit that was decided after you submitted your brief? That was a case where the Third Circuit considered whether Judge Rubino had entered a final order where some of the defendants were dismissed for lack of personal jurisdiction and others were in bankruptcy and the Third Circuit said that was a final order. I had not been familiar with that decision, Judge. I may have been looking at it for another issue, but I had not seen that. Looking at the merits, the merits turn on two things. One is the timing and the other is the pleadings. As Your Honor has noted, it was expressly disclaimed, and I understand the dog analogy, but one cannot call it a dog and then say it's a cat after final judgment. The liberality of amendments under Rule 15 ends after summary judgment, and that's what happened here. It was a tactical decision to avoid maritime jurisdiction, not to apply maritime law. The benefits from that... I'm confused on the dog, cat, tail, leg issue. Here's what I read, and this is from page five of your brief. Quote, no claim arising under federal law was alleged in the complaint. No substantive federal question was raised, and no substantive federal issue needs to be decided upon in order to establish the removing defendant's liability under the causes of action in the original and amended complaint. And this is not from the state court action. This is actually in the MDL record at document 5968 of page seven, right? Correct. That's what Judge Rebrano had in front of him. He did it. It disclaimed it. That's why I said it's akin to me to invited error or judicial estoppel. It's as if, you know, for the cases we cited, it's like asking for a jury instruction and then saying we object to it. It's telling the court that a case should be interpreted or the statute should be interpreted a certain way. It's asking for the jury instruction, getting an adverse jury verdict, and then complaining the jury was misinstructed. It's more like that, isn't it? And that was the second part of my argument, Judge. It's a timing issue. And I didn't even read the other quote that's here. And this is when this was opposing the remand. So it got taken up to the federal court. They argued to the federal court in Alabama, quote, not only does plaintiff's complaint not, and not was an emphasis in the original, allege any federal claims. The complaint specifically discounts, denies, and disavows any federal claims. The same thing is true after the report and recommendation. There was no objection based on federal law. Rubarino entered his order. And this court has already observed that did not raise the issue of Connor being a change in controlling law. The Camretta case tells us that even if a judge issues a decision, it's not controlling law for that judge. And after the, excuse me, the standard of review that applies when one doesn't raise that issue, doesn't raise maritime law until later, it can either be deemed waived or it's reviewed under a plain error standard. And consequently, we believe the maritime issue and the idea of a change in controlling law, trying to invoke the Quinteros factors, we believe both of those have been waived or are subject to a plain error review. The liberality of amendments, I want to address that for a moment. Federal Rule 9H provides that one can elect or not elect. It's not mandatory. But as Fedorczyk out of the Third Circuit tells us, if there's no election, then it's not an admiralty case. The benefits of that, I've mentioned, if it's not an admiralty case, you have an opportunity for punitive damages and a jury, which some plaintiffs are interested in and believe would be advantageous. Bear in mind this entire time, there was a maritime proceeding for this plaintiff in the state of Ohio. It was proceeding on asbestos alone. But when one looks at the existence of a pending maritime claim that was pursued all the way to conclusion with no effort to add this claim to it, and when one considers the disclaimer in the initial pleadings, the effort to oppose remand disclaiming maritime claims, it's evident that plaintiff was aware that maritime law may have been in play and tailored his complaint of which he is the master to the fullest extent he possibly could to avoid invoking maritime jurisdiction. Waited until the case was over, decided on summary judgment. Only then did he attempt to amend it. And again, as the precedents we cited state, reconsideration should not be a vehicle for parties to correct a failed litigation strategy. That's what we have here. It's not a case where he had no opportunity to have his day in court. We don't have a change of law in Connor. He had a parallel maritime claim. And in this instance, waited until after those state claims were unsuccessful on summary judgment to attempt to plead maritime jurisdiction. Really, if one looks at the post-trial motions, they're truly a motion to amend the pleadings. Reconsideration really doesn't fit. The law that was before the court when Judge Albrino rendered his decision, the law that was being decided by Justice Ruder, who was the magistrate on the matter, had only state law claims in front of them. Reconsideration of that in the absence of plain error or in the absence of some mistake of law would not be appropriate. Mr. Harris, if you don't have anything further, I don't think we do either. Okay. Thank you. Mr. Finch. Very briefly, Your Honor. The other maritime case is a red herring. That is a completely separate lawsuit for a completely separate injury. It was a nonmalignant disease. Mr. Corley, from his long service in the Navy, was diagnosed with a nonmalignant disease. A different law firm brought that case. They sued in addition to products defendants. They sued the boat owners. Under the Jones Act, there's concurrent state and federal jurisdiction. This case didn't have a claim against the Navy, obviously, because you can't sue the Navy, and they didn't have a claim against the employers on the context of the high seas. I think the argument that somehow the fact that there was a pending maritime case has anything to do with this is just wrong. I mean, it was a completely different case, and he could only have sued for his mesothelioma case when he developed mesothelioma, which killed him in 2009. In terms of should we have styled our motion for reconsideration a motion to amend the pleadings, perhaps we should. At the end of the day, Your Honor, the Connor v. Alpha Laval was the first time that there was some clear guidance for cases before MDL 875 that you could have a products liability based maritime claim when the exposures occurred on the high seas, which these clearly did. There's no prejudice to them. They were able to depose Mr. Corley extensively about all of his asbestos exposures, including when he was sailing to and from China in the Navy. At worst, Your Honor, if you were to reverse and remand this to have an evidentiary hearing as to whether maritime law should apply, we would request that. But I don't think there's any other case that's ever been before this Court where a sudden groundbreaking decision from the Court that's got the case and is going to have multiple similar cases shows up after summary judgment has been granted. And for that reason, I think the arguments have been . . . It's been the law a long time that torts that occur on navigable waters are maritime torts. Yes. There's nothing groundbreaking about that. But it hadn't been applied in the asbestos context until after the . . . at least it hadn't been . . . there were a lot of cases and Judge Rubino goes through them in the Connors . . . What law applies? What substantive law applies? This is a choice of law question. And . . . Then on notice that a tort that occurs on navigable waters and has a connection with maritime commerce is a maritime tort for which maritime law applies. That's been the law an awful long time. A long time, but you have to put the law in context. There were cases pre-Grubert in the asbestos context. The Oman case from the Fourth Circuit, the Eagle Pitcher case from the Third Circuit which said if somebody's exposed to asbestos both on the land and on the sea, it wouldn't be maritime law appropriate. And I believe there's an Eleventh Circuit case called Cochran that predates the Grubart case. So the cases when it ended up in the Middle District . . . excuse me, when it ended up in MDL 875 which is the Eastern District of Pennsylvania, it was up until that point it was controlled by that Eagle Pitcher case which was from 1998. And it didn't come up again really in . . . That's a District Court case, right? No, the Eagle Pitcher case, I believe it was a Third Circuit case. And the . . . may I go back to my . . . No, I'll take your word for it. I believe it was a Third Circuit case. My memory is not quite as . . . So you're saying the Third Circuit reverse courts? No, the Third Circuit was decided in 1988. Then the Sisson and Grubart cases came out in 1991 and 1995 from the United States Supreme Court respectively. And then Rubrino was taking all this and saying, this is how I'm going to apply this. I'm not going to follow Eagle Pitcher because there's been a change in the Supreme Court precedent in 1995. And yes, 25 years ago was a long time ago, but it didn't . . . remember, in the black hole in Philadelphia, cases sat there for many, many years. So with that, Your Honor, unless Your Honor has other questions, I would just plead with the Court to look at the substance of what this case is about. I have one thing that I'm curious about. Do your clients have any claims still pending in bankruptcy against any of these defendants? In theory, they would have a case against Owens, Illinois, which just went into bankruptcy. And we dismissed them in part because of the suggestion of bankruptcy. But you're not pursuing Coltec and Garlock in bankruptcy still? You know what the status of that is? Here's the way . . . unfortunately, I have a lot of experience with 524G bankruptcies. The trusts are set up when a company goes into bankruptcy, and many times it takes years before the trust will begin to start paying claims. The Garlock bankruptcy was resolved, which includes the Coltec stuff, in 2017. The trust was set up in 2018. I don't even know if anybody's gotten their claims processed and paid through the Garlock bankruptcy plan yet. I mean, there's a long tail, to end with the metaphor I began with, for these kind of claims. Thank you. Thank you, Mr. Finch. We're in recess until tomorrow.